UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT FEMINO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SEDGWICK CLAIMS MANAGEMENT )<br>SERVICES, INC. and KEYSIGHT )<br>TECHNOLGIES, INC., )<br>)<br>Defendants. )<br>) | Civil Action No.<br>20-11373-FDS |

**MEMORANDUM AND ORDER ON**
**DEFENDANTS' MOTIONS TO DISMISS**

**SAYLOR, C.J.**

This is a dispute about when disability benefits should end. Plaintiff Robert Femino worked for many years as a human resources senior manager for defendant Keysight Technologies, Inc. While employed at Keysight, Femino suffered a heart attack and became eligible for disability benefits under the Keysight Disability Plan. Defendant Sedgwick Claims Management Services, Inc. administers the Plan.

Femino's disability benefits terminated on November 1, 2018, after he turned 65. The second amended complaint ("SAC") alleges that he was informed orally on several occasions, and once in writing, that his benefits would extend to October 31, 2019. He has brought suit against defendants, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001.

Both defendants have filed motions to dismiss alleging that the complaint fails to state a claim upon which relief can be granted. For the following reasons, the motions will be granted.

**I.      Background**

      **A.      Factual Background**

The following facts are set forth as alleged in the complaint.

Robert Femino worked as a human resources senior manager for Agilent Technologies, Inc., which later became Keysight Technologies, Inc. (SAC ¶¶ 1, 2, 5). Keysight offered disability benefits under the Keysight Technologies, Inc. Disability Plan ("the Plan") to its eligible employees. (Def. Mem., Ex. 1).[1] Sedgwick Claims Management Services, Inc. administered claims under the Plan. (SAC ¶ 4). According to the Plan's terms, if an employee becomes disabled before his 61st birthday, he is entitled to disability benefits until the first day of the month following the month in which he turns 65. (Def. Mem., Ex. 1 at 13).[2]

The complaint alleges that Femino suffered a heart attack in October 2006, and that Sedgwick subsequently approved his request for long-term disability benefits under the Plan. (SAC ¶¶ 3, 10-12). It also contends that in 2009, Sedgwick sent Femino a notice stating "[y]our leave request is approved through 31-Oct-2019." (*Id.* ¶ 12; *see also* Def. Mem., Ex. 3 at 2).[3] It further alleges that Femino's wife called Sedgwick on more than ten occasions between 2007 and 2018 and heard a recorded message that stated his disability benefits extended through October 2019. (SAC ¶ 13; Affidavit of Cynthia P. Femino ¶¶ 2-3).

---

[1] Because Sedgwick relies on and incorporates the contentions raised in Keysight's motion to dismiss and supporting memorandum, all references in this memorandum to a defense exhibit refer to those of Keysight.

[2] The court may consider the Plan document at the motion to dismiss stage even though it is not attached to the complaint because the complaint incorporates it by reference and the two alleged violations depend on it. *See Newman v. Lehman Brothers Holdings Inc.*, 901 F.3d 19, 26 (1st Cir. 2018) (finding that the district court could consider an OSHA complaint upon a motion to dismiss because the complaint explicitly referenced it and depended on it for a claim to proceed); *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (finding that a court could consider information incorporated by reference into the complaint when deciding a motion to dismiss).

[3] Femino incorporates by reference the 2009 communication by quoting a portion of it in the complaint; accordingly, the court may consider it as an attachment to Keysight's motion to dismiss. *See Haley*, 657 F.3d at 46.

Femino collected disability benefits from 2007 until 2018. (*See* Def. Mem., Ex. 2 at 2; SAC ¶ 14). In October 2018, he turned 65. (*See* Def. Mem., Ex. 2 at 2).[4] He received his final disability payment on or around November 1, 2018. (*See id.*; *see also* SAC ¶ 14).

The complaint alleges that Femino asked Sedgwick why his benefits had been terminated "prematurely." (SAC ¶ 15). It contends that a Sedgwick representative told him that the approval of his disability benefits through October 31, 2019, had been a typographical error. (*Id.* ¶ 16). Femino appealed the denial of his benefits, which was subsequently denied. (Def. Mem., Ex. 2 at 2-4).

The complaint alleges that because Femino did not receive his disability benefits between November 2018 and October 2019, he was "prematurely forced to take [a] retirement annuity distribution which would approximately replace the Sedgwick disability benefits but forever lock in the lifetime monetary annual amount with zero ability or rights to access the princip[al]." (SAC ¶ 19). It contends that if he had received disability benefits for that year, he would have received $95,520 in additional benefits. (*Id.* ¶ 18).

B. **Procedural Background**

Plaintiff filed the initial complaint in this case on July 21, 2020. The complaint was then amended twice—first on October 8, 2020, and again on November 5, 2020. Count 1 is a claim to recover benefits under ERISA § 502(a)(1)(B). (SAC at 3). Count 2 seeks equitable relief under ERISA § 502(a)(3). (*Id.*).

On March 10, 2021, defendants moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

---

[4] The court may consider the final decision letter sent by Sedgwick denying Femino benefits after October 2018 because it demonstrates that Femino exhausted his administrative appeals, a statutory prerequisite for the litigation to proceed. *See Newman*, 901 F.3d at 26.

II.  **Standard of Review**

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano del Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

III.  **Analysis**

    A.  **Claim Under ERISA § 502(a)(1)(B)**

The complaint first alleges that plaintiff is entitled to benefits wrongfully denied to him from November 2018 until October 2019. The ERISA statute, § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), provides, in part, that a participant or beneficiary may bring a civil action to "recover benefits due to him under the terms of his plan." The benefits due to a participant, therefore, are dependent upon the terms of the plan. *See Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 108 (2013) (noting that it is important to enforce the terms of the plan as written when evaluating § 502(a)(1)(B) claims); *Edes v. Verizon Commc'ns, Inc.*, 417 F.3d 133,

4

137-38 (1st Cir. 2005) (finding that the language of the plan controls when determining what benefits a plaintiff is entitled to receive). Moreover, "where a disputed term is unambiguous, [courts] presume its natural meaning to be conclusive evidence of [the parties'] intent." *Bellino v. Schlumberger Techs., Inc.*, 944 F.2d 26, 29-30 (1st Cir. 1991). Terms of a plan are ambiguous only when reasonable differences of opinions can exist about their meaning. *See Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 783 (1st Cir. 2014).

Here, the Plan unambiguously states that if an employee becomes disabled before his 61st birthday, he is entitled to disability benefits until the first day of the month following the month in which he turns 65. (Def. Mem., Ex. 1 at 13). Plaintiff became disabled in October 2006, which was before his 61st birthday. (*See id.*, Ex. 2 at 2; SAC ¶ 3). He then turned 65 in October 2018. (Def. Mem., Ex. 2 at 2). In accordance with the terms of the Plan, he was no longer entitled to disability benefits after November 1, 2018.

Plaintiff, however, contends that his benefits should have extended an additional year because Sedgwick sent him a notice stating "[y]our leave request is approved through 31-Oct-2019" and because his wife listened to a recorded message from Sedgwick that stated his benefits were approved through October 2019. (SAC ¶¶ 12-13). But a plan must be *amended* before a participant may become entitled to additional benefits not provided for in the plan. *See Guerra-Delgado*, 774 F.3d at 782 (noting that plans must "provide a procedure for amending the plan, and modifications made in contravention of the plan's stated procedure violate that requirement") (citation and alteration omitted). To amend an ERISA plan, the purported amendment must be in writing and must state that it alters the plan. *See id.* at 780-81.

Here, the recorded message and the 2009 communication did not amend the clear terms of the Plan. The recorded message cannot constitute an amendment because it was an oral

communication. *See id.* at 780; *Livick v. Gillette Co.*, 524 F.3d 24, 31 (1st Cir. 2008). In addition, the 2009 communication, while written, did not contend that it was amending the terms of the Plan. Indeed, it did not even address the date through which his disability benefits had been approved—only the ending date of his "leave" from the company. (Def. Mem., Ex. 3 at 2).[5] Thus, plaintiff has not demonstrated that the Plan was ever amended to provide him with benefits through October 31, 2019.

Accordingly, defendants' motions to dismiss the claim under § 502(a)(1)(B) will be granted.

### B. Claim Under ERISA § 502(a)(3)

The complaint also alleges a claim under ERISA § 502(a)(3), a provision that operates as a "catchall" to provide "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Variety Corp. v. Howe*, 516 U.S. 489, 512 (1996). Because plaintiff contends that defendants misled him about the terms of the Plan, the Court will construe the claim as one for equitable estoppel under § 502(a)(3). *See Earl T. Sydney & Sydney Sheet Metal, Inc. v. Sheet Metal Workers' Pension Fund*, 2017 WL 507210, at *11 (D. Mass. Feb. 7, 2017) (finding that a "complaint is essentially a claim for equitable estoppel" when it is based on alleged statements leading a plaintiff to believe he was entitled to certain benefits or treatment under the plan).

To prove a claim for equitable estoppel, the plaintiff must show (1) that the defendant made a definite misrepresentation of fact with reason to believe that the plaintiff would rely on the misrepresentation, (2) that the plaintiff did reasonably rely on that misrepresentation, and (3)

---

[5] The 2009 communication stated that plaintiff's "leave request" was "currently approved" through October 2019. (Def. Mem., Ex. 3 at 2). The communication thus mentions the timeframe of his leave request, not his disability benefits, and states that it is "currently" approved, thereby implying that it could be reconsidered.

that such reliance was to his detriment.  *See Guerra-Delgado*, 774 F.3d at 782; *Hoffman v. Textron, Inc.*, 2018 WL 3352963, at *5 (D. Mass. July 9, 2018).  However, relief under § 502(a)(3) is limited to situations where a plaintiff reasonably relied on an incorrect statement interpreting an *ambiguous* plan term.  *See Guerra-Delgado*, 774 F.3d at 782-83 (rejecting an equitable estoppel claim because the terms of the plan were unambiguous).  Thus, if a plan term is clear, any reliance on informal statements that contradict that plan term is unreasonable. *Id.* at 783.

Here, plaintiff did not reasonably rely on informal statements that he would receive benefits through October 2019.  Such statements directly contradict the clear Plan terms.  Again, the Plan states that if an employee becomes disabled before his 61st birthday, he is entitled to disability benefits until the first day of the month following the month in which he turns 65. (Def. Mem., Ex. 1 at 13).  Those terms are not subject to reasonable differences of opinion about their meaning and therefore are not ambiguous.  Plaintiff thus could not reasonably believe that the recorded messages or the 2009 communication altered the terms of the Plan to extend his disability benefits beyond the month of his 65th birthday.  *See Guerra-Delgado*, 774 F.3d at 783; *Livick*, 524 F.3d at 31 ("[I]f the provision is clear, . . . an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable.").

Accordingly, defendants' motions to dismiss the claim under § 502(a)(3) will be granted.

## IV.     Conclusion

For the foregoing reasons, defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are GRANTED.

**So Ordered.**

                                                          /s/ F. Dennis Saylor IV
                                                          F. Dennis Saylor IV
Dated:  July 28, 2021                       Chief Judge, United States District Court